UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BRETT ELLIOT,

Plaintiff,

v.

SHERIFF DANIEL STATON, CHIEF DEPUTY TIM MOORE, CAPTAIN MONTE REISER, BOB SKIPPER, CAPTAIN CAROL HASLER, JOHN DOES #1-10, Multnomah County Sheriff's Department employees, and MULTNOMAH COUNTY, by and through the Multnomah County Sheriff's Office, a political subdivision of the State of Oregon,

Defendants.

3:11-cv-1536 -ST

FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

In connection to his employment at the Multnomah County Sheriff's Office, plaintiff, Brett Elliot ("Elliot"), filed a Complaint on December 21, 2011, against Multnomah County and five of its current and former employees: Sheriff Daniel Staton ("Staton"), Chief Deputy Tim Moore ("Moore"), Captain Monte Reiser ("Reiser"), Bob Skipper ("Skipper"), and Captain Carol Hasler ("Hasler"), as well as John Does ## 1-10. He alleges substantive and procedural due process claims pursuant to 42 USC § 1983 (First and Second Claims), conspiracy to deprive him

of equal protection of the law pursuant to 42 USC §1985 (Third Claim), whistleblower retaliation in violation of ORS 659A.230 and 659A.199 (Fourth and Fifth Claims), and common law claim of intentional infliction of emotional distress ("IIED") (Sixth Claim).

This court has subject matter jurisdiction over the §1983 and § 1985 claims pursuant to 28 USC §§ 1331 and 1343 and over the state law claims under 28 USC §1367.

Defendants have filed a Motion to Dismiss all claims except the procedural due process claim (Second Claim) (docket # 14). At the hearing on the motion, Elliot voluntarily dismissed the Third and Sixth Claims (docket # 24). Therefore, the motion is directed only at the First, Fourth and Fifth Claims. For the reasons set forth below, that motion should be GRANTED in part and DENIED in part.

**ALLEGATIONS**

Elliot started his career with the Multnomah County Sheriff's Office ("MCSO") in 1985 and holds basic, intermediate, and advanced level certifications as a Corrections Officer and Executive as a Police Officer. Complaint, ¶ 16. In addition, he has completed over 2,000 documented hours of job-related training, served as a subject matter expert in preparation of multiple promotion exams for Sergeants and Lieutenants, worked as a firearms instructor for several years, and participated in multiple state-wide task forces. *Id.* He was promoted to Law Enforcement Sergeant in 1997, Law Enforcement Lieutenant in 2000, and Law Enforcement Captain in 2002. *Id.* He is a 2006 Federal Bureau of Investigation National Academy graduate which is an honor accorded to only 1% of law enforcement personnel. *Id.*

In 2006 Moore, Chief Deputy of the Corrections Division, sought a transfer to the Law Enforcement Division, although he had no state certification or experience. *Id*, ¶ 17. State

certification requires completion of the Field Training Evaluation Program ("FTEP") and the Field Training Evaluation Manual, supervised by coaches. *Id*, ¶ 18.

Moore claimed that he completed the state certification requirements, but he falsified the documentation. *Id*, ¶ 19. He listed Elliot and other deputies as coaches on his Field Training Manual, but none of them had formally served as FTEP coaches or signed off on any portion of the Manual. *Id.* Reiser signed off on significant portions of Moore's manual without ever working in the field, in uniform, in a patrol district, or in a patrol cruiser with Moore. *Id.* On January 17, 2006, Sheriff Giusto appointed Moore as Chief Deputy of the Law Enforcement Division. *Id*, ¶ 18.

In February 2009, Elliot reported Moore's falsification to Sheriff Skipper who had replaced Sheriff Giusto. *Id*, ¶ 20. At Sheriff Skipper's request, Elliot submitted a formal complaint with a mutually agreed-upon decision for an outside-agency investigation. *Id.* Sheriff Skipper told Elliot that he would call the Superintendent and send the complaint to the Oregon State Police for investigation. *Id.* Sheriff Skipper, however, later changed his mind and did not follow through with the investigation. *Id.*

The Multnomah District Attorney's Office ("DA's office") then became aware of the complaint and requested an investigation. *Id.* The DA's office commenced a criminal investigation, but ultimately declined to prosecute. *Id.* Despite being under formal criminal investigation, neither Moore nor Reiser was placed on administrative leave. *Id.*

Sheriff Skipper wrote a letter to Elliot, accusing him of "lack of loyalty" and telling him to "stop spreading discontent." *Id*, ¶ 21. On April 10, 2009, Sheriff Skipper transferred Elliot from Law Enforcement Patrol Captain to the Court Services Section of the Corrections Division. *Id.* At the time of this transfer, Elliot was the senior Law Enforcement command member. *Id.*

He was told that the transfer was not a punishment but he was being moved because he "talked." *Id*.

After Sheriff Skipper resigned in November 2009, Sheriff Staton became Interim Sheriff. *Id*, ¶ 22. In December 2009, Sheriff Staton transferred Elliot back to Law Enforcement under the supervision of the Business Services Director. *Id.* Elliot was assigned to a cubicle in the Multnomah County building and performed very little law enforcement work. *Id.* Elliot was the only Captain in the 1,000 member organization to be assigned to a cubicle instead of an office. *Id*. Moore also denied his request for an empty office in the building. *Id.* Elliot instead used a report writing room in the basement for months. *Id.* Elliot alleges that this move was retaliation and intended to force him to resign. *Id.*

In June 2010, Elliot celebrated 25 years of service to the MCSO. *Id*, ¶ 23. On June 23, 2010, at a meeting with Sheriff Staton and the Human Resources Director, Elliot was given a notice of demotion from Captain to Lieutenant. *Id.* Sheriff Staton explained that he had "too many captains," even though the number of captains had not increased significantly in the recent time. *Id.* There were no other captain demotions. *Id.* Sheriff Staton added that he "wanted to remain neutral" in "that thing" Elliot "had going with Skipper and Moore." *Id.* He told Elliot that he had documents from three agencies reviewing "the situation" and that he could not do anything with it. *Id.*

In July 2010, Elliot received the formal Notice of Demotion. *Id*, ¶ 24. Sheriff Staton transferred him to the River Patrol Unit as a Lieutenant, even though Elliot had previously served the River Patrol Unit as a Captain. *Id.* The transfer and demotion included a pay reduction and a significantly lower potential maximum pay. *Id.* His classification was changed to "executive/unclassified service." *Id.* Unclassified employees are considered at will employees

who may be terminated at any time, with or without cause. *Id.* According to the terms of the classification acceptance document, if Elliot did not accept this new classification, he would be considered "resigning his employment with Multnomah County." *Id.* Sheriff Staton also told Elliot that if he did not like the change, he could find employment elsewhere. *Id*. This was contrary to the common agency practice of a demotion not causing a reduction in pay. *Id.* After his demotion, Elliot was in fear for his employment and the sudden new potential to be dismissed without cause. *Id.* As a result, he suffered considerable anxiety and alarm. *Id.*

In October 2010, Elliot's firearm was removed from the authorized firearm list. *Id*, ¶ 25. Elliot was the only MCSO employee who used that specific weapon and had used it for years without complaint. *Id.*

Since the time Elliot filed his complaint against Moore in February 2009, he has been treated differently by his superiors and his co-workers, including the defendants, and is subjected to daily negative treatment in a hostile environment. *Id*. He has also been isolated and outcast from his co-workers at the MCSO. *Id.*

On February 1, 2011, Moore became Undersheriff of the MCSO. *Id*, ¶ 26. Reiser was transferred to the Law Enforcement Division and made Patrol Captain on June 6, 2011. *Id*. Elliot is still assigned to the River Patrol Unit. *Id.* The retaliation and adverse treatment in the workplace continues. *Id*.

## STANDARDS

In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FRCP 8(a)(2). This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009), citing *Bell Atl.*

*Corp. v. Twombly*, 550 US 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*, quoting *Twombly*, 550 US at 555. In order to survive a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*, quoting *Twombly*, 550 US at 570.

In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995). In addition to the allegations of the complaint, the court may also consider documents whose authenticity no party questions which are attached to, or incorporated by reference into, the complaint, as well as matters capable of judicial notice. *Knievel v. ESPN*, 393 F3d 1068, 1076 (9th Cir 2005). The court need not accept as true allegations in the complaint that contradict these sources. *Lazy Y Ranch, Ltd., v. Behrens*, 546 F3d 580, 588 (9th Cir 2008).

## FINDINGS

### I. Fourteenth Amendment: Substantive Due Process (First Claim)

The First Claim alleges that the defendants violated Elliot's substantive due process rights under the Fourteenth Amendment. A plaintiff may bring an action under § 1983 to redress violations of his "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 US 658, 690-95 (1978). To a state a Fourteenth Amendment claim, a plaintiff must show that a person acting under the color of state law deprived the plaintiff of the "rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 US 107, 132 (1994); *Giba v. Cook*, 232

F Supp2d 1171, 1179 (D Or 2002). The substantive due process component of the Fourteenth Amendment protects against actions so arbitrary that they shock the conscience. *County of Sacramento v. Lewis*, 523 US 833, 846-47, (1998); *see also Collins v. City of Harker Heights*, 503 US 115, 130 (1992). Negligent action is insufficient to establish a violation of substantive due process.

**A. <u>Qualified Immunity</u>**

The individual defendants contend that they are entitled to qualified immunity for the alleged substantive due process violation.[1] The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 US 800, 818 (1982). Therefore, public officials are generally immune from civil liability unless their actions violate clearly established law because "a reasonably competent public official should know the law governing his conduct." *Id*. "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 US 224, 229 (1991) (citation and internal quotations omitted).

The qualified immunity inquiry has traditionally involved two prongs. First, the court must decide whether the plaintiff has shown that a constitutional or statutory right has been violated. *Saucier v. Katz*, 533 US 194, 201 (2001). If the first step is satisfied, the court must then decide whether the right at issue was "clearly established" at the time of the alleged violation. *Id*. However, the Supreme Court recently held that courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

[1] At the hearing on the motion, Elliot's counsel clarified that the First Claim is not alleged against defendant Multnomah County.

addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 US 223, 236 (2009).

**B. Analysis**

Elliot argues that he has a protected property right in his job and reputation and a liberty interest to be free from daily hostility and negative treatment in employment. He asserts that each right has been significantly impacted without due process by defendants' illegal and unconstitutional actions, including an arbitrary and capricious decision to transfer him to a lesser position because he "talked," threats meant as punishment, demotion from captain to lieutenant after 25 years of service, and daily negative treatment. Complaint, ¶¶ 28-29. Defendants claim that they are entitled to qualified immunity because Elliot has alleged no substantial due process right that defendants violated, and even if he had, that right was not clearly established.

The Ninth Circuit has recognized a substantive due process right to pursue the occupation of one's choice. *FDIC v. Henderson*, 940 F2d 465, 474 (9th Cir 1991). In addition, "a substantive due process right to a non-defamed reputation exists only to the extent that the defamation is so severe as to interfere with the 'exercise of other fundamental freedoms such as . . . the right to engage in any of the common occupations of life.'" *Halbig v. Navajo Cnty.*, Case No. CV 09-8124-PCT-DGC, 2010 WL 432335, at *6 (D Ariz Feb. 2, 2010), citing *Beitzell v. Jeffrey*, 643 F2d 879, 877 (1st Cir 1981).

However, whether a person has a substantive due process right to his public employment is an unsettled question of law in the Ninth Circuit. *Engquist v. Oregon Dep't of Agric.*, 478 F3d 985, 996-97 (9th Cir 2007). Most other circuits have rejected the claim that substantive due

process protects the right to a particular public employment position.[2] However, one circuit has found such a right when "school authorities . . . make an arbitrary and capricious decision significantly affecting a tenured teacher's employment status." *Newman v. Massachusetts*, 884 F2d 19, 25 (1st Cir 1989). In that case, the plaintiff was barred from voting on degrees and serving on committees or as chair of a department, and a letter of censure was placed in her permanent file, which "undoubtedly affects her ability to secure other employment in the future. . . . it [is] obvious that this severe sanction substantially damaged plaintiff's property interest in her position." *Id*, at 25, n6. Here, in contrast, Elliot did not receive official censure and nothing indicates that any of the defendants' actions will affect his ability to secure other employment.

Even if Elliot has a substantive due process right as alleged, defendants are entitled to qualified immunity because there is "no clearly established constitutional right to substantive due process protection of continued public employment." *Lum v. Jensen*, 876 F2d 1385, 1389 (9th Cir 1989). In that case, Lum was employed by the California Department of Justice, and after meeting with defendant employer on two previous occasions to discuss his job performance, he was placed on administrative leave and then terminated. He filed a claim alleging denial of both substantive and procedural due process violations, arguing that his termination was arbitrary, capricious, and pretextual. The Ninth Circuit granted summary judgment to the defendants,

---

[2] *See Local 342, Long Island Public Serv. Employees v. Town Bd. of Huntington*, 31 F3d 1191, 1196 (2nd Cir 1994) ("We do not think, however, that simple, state-law contractual rights, without more, are worthy of substantive due process protection."); *Nicholas v. Pa. State Univ.*, 227 F3d 133, 142-43 (3rd Cir 2000); *Huang v. Board of Governors of Univ. of N.C.*, 902 F2d 1134, 1142 n10 (4th Cir 1990) (professor's interest in position in university department "is essentially a state law contract right, not a fundamental interest embodied in the Constitution"); *Sutton v. Cleveland Bd. of Educ.*, 958 F2d 1339, 1350 (6th Cir 1992) ("plaintiffs' state-created right to tenured employment lacks substantive due process protection"); *Kauth v. Hartford Ins. Co. of Ill.*, 852 F2d 951, 958 (7th Cir 1988) ("In cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest . . . the plaintiff has not stated a substantive due process claim."); *Singleton v. Cecil*, 176 F3d 419, 425-26 (8th Cir 1999) (en banc) ("a public employee's interest in continued employment with a governmental employer is not so 'fundamental' as to be protected by substantive due process"); *McKinney v. Pate*, 20 F3d 1550, 1560 (11th Cir 1994) (*en banc*) ("employment rights are state-created rights and are not 'fundamental' rights created by the Constitution.").

explaining: "In our view, the absence of binding precedent in this circuit plus the conflict between the circuits is sufficient, under the circumstances of this case, to undermine the clearly established nature of a right." *Id.* The law has not become any clearer since then.

Elliot attempts to distinguish *Lum* by arguing that his allegations are based on the irrational and arbitrary actions of defendants in their hostile treatment of him. In support of this theory, he cites several Supreme Court cases generally describing impermissible governmental restrictions on substantive due process rights. Each of these cases is easily distinguishable. In *Harrah Indep. Sch. Dist. v. Martin*, 440 US 194 (1979), the Court found that the non-renewal of the teacher's contract due to her failure to earn required credits did not deprive her of her rights. In contrast, Elliot is still employed at MCSO. In *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv.*, 489 US 189, 196 (1989), the Court warned against government use of power as an instrument of oppression, but the issue concerned whether the state could violate due process rights by failing to protect an individual from private violence. Ultimately, the Court held it did not. In *Collins v. City of Harker Heights*, 503 US 115, 127 n10 (1991), the Court found that the city's failure to warn its employee about unknown hazards in the workplace did not violate due process rights. "The 'process' that the Constitution guarantees in connection with any deprivation of liberty thus includes a continuing obligation to satisfy certain minimal custodial standards. Petitioner cannot maintain, however, that the city deprived Collins of his liberty when it made, and he voluntarily accepted, an offer of employment." *Id* at 127-28, citing *DeShaney*, 489 US at 200.

None of these cases advance Elliot's argument for a deprivation of his rights based on his demotion, transfers, and daily negative treatment. If termination of employment is not a clearly established right, as in *Lum,* then neither is a demotion, transfer or hostile workplace. Moreover,

Elliot has alleged a claim based on the same conduct under state law for whistleblower retaliation. As explained in *Collins*, "[b]ecause the Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society, we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law." 503 US at 128 (citations and quotations omitted).

In sum, even if Elliot has a substantive due process right to a job free of hostility, that right has not been clearly established. Government officials who perform discretionary functions are protected from liability for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 US 0800, 818 (1982). Thus, the First Claim should be dismissed with prejudice.

## II. <u>Whistleblowing Claims (Fourth and Fifth Claims)</u>

The Fourth and Fifth Claims both allege violations of Oregon's Whistleblowing Act, ORS 659A.199-.236. The Fourth Claim alleges that defendants violated ORS 659A.199 which provides as follows:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

ORS 659A.199(1).

The Fifth Claim alleges that defendants violated ORS 659A.230 which bars such adverse actions by an employer against an employee "for the reason that the employee has in good faith reported criminal activity by any person, has in good faith caused a complainant's information

or complaint to be filed against any person, has in good faith cooperated with any law enforcement agency conducting a criminal investigation, has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial."

To establish a prima facie case of retaliation under ORS 659A.199 and 659A.230, a plaintiff "must show 1) that [he] was engaging in a protected activity, 2) that [he] suffered an adverse employment decision, and 3) that there was a causal link between the protected activity and the adverse employment decision." *E.g.*, *Ruggles v. Cal. Polytechnic State Univ.*, 797 F2d 782, 785 (9th Cir 1986); *Shultz v. Multnomah Cnty.*, No. 08–CV–886–BR, 2009 WL 1476689, at *13 (D Or May 27, 2009).

**A. <u>Proper Defendant</u>**

The Oregon Tort Claims Act ("OTCA"), ORS 30.260-.300, applies to claims against a public body's "officers, employees and agents acting within the scope of their employment or duties[.]" ORS 30.265(1) (2009). "The sole cause of action for any tort of officers, employees, or agents . . . shall be an action against the public body," which is substituted as the sole defendant. *Id.*

Here, Elliot has alleged both whistleblower retaliation claims against officers and employees of the MCSO, a political subdivision of the State of Oregon. Accordingly, as Elliot concedes, the State of Oregon must be substituted for all defendants on these tort claims,[3] and the individually named defendants (Staton, Moore, Reiser, Skipper, Hasler, and John Does) should be dismissed from the tort claims, leaving Multnomah County as the proper defendant.

---

[3] The 2011 Revised Statutes were not in effect until January 1, 2012. The 2011 revisions to the OTCA added subsection (4) which allows no actions against an officer, employee, or agent of a public body unless the plaintiff has claimed damages in excess of ORS 30.271-273 (2011). Therefore, even if Elliot alleged the requisite amount of damages, he cannot pursue tort claims against the individual defendants.

**B. Statutes of Limitations**

The OTCA has a mandatory notice provision: "No action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section." ORS 30.275(1). Elliot was required to give this notice of his tort claims within 180 days after the alleged loss or injury. ORS 30.275(2)(b). "The pleading and proof of notice sufficient to satisfy the requirements of ORS 30.275 are a mandatory requirement and a condition precedent to recovery under the [OTCA]." *Beaver v. Pelett*, 299 Or 664, 671, 705 P2d 1149, 1152 (1985) (*en banc*), quoting *Urban Renewal Agency of City of Coos Bay v. Lackey*, 275 Or 35, 40, 549 P2d 657, 660 (1976) (brackets omitted). A complaint that fails to allege that notice was given in accordance with the OTCA is subject to dismissal. *Brinkley v. Oregon Health Sciences Univ.*, 94 Or App 531, 537, 766 P2d 1045, 1049 (1988), *rev. denied* 307 Or 571, 771 P2d 1021 (1989).

The Complaint fails to allege that Elliot complied with the OTCA notice provision. However, in response to the Motion to Dismiss, his counsel has submitted a declaration containing OTCA Notices dated February 2, 2011, addressed to Sheriff Staton, Henry Lazenby, Jr. (Multnomah County Counsel), and Jeff Cogen (Multnomah County Chair). Burrows Decl., ¶¶ 2-4; Exs. 1-3. Although Elliot could easily amend his Complaint to allege compliance with the OTCA, defendants object to any such amendment as futile.

To the extent that the February 1, 2011 letters satisfy the OTCA notice requirements, they only give notice to events that occurred in the preceding 180 days (on or after August 5, 2010). Of the alleged injuries, only one, the removal of his firearm from the authorized firearm list which occurred in October 2010 (Complaint, ¶ 25), is within the 180-day period allowed under

ORS 30.275(2)(b). His demotion from Captain to Lieutenant occurred in July 2010 (*id*, ¶ 24); he was assigned to a cubicle in December 2009 (*id*, ¶ 22); he was transferred to Court Services Section of the Correction Division in April 2009 (*id*, ¶ 21); and he was threatened and accused of lack of loyalty during that same time period (*id*). Asserting that each of the alleged acts which occurred outside the 180-day period are discrete actions, defendants contend that they should be dismissed as untimely under the OTCA.

In addition, a claim for an unlawful employment practice must be brought with one year. ORS 659A.875(1). The statute of limitations begins to run when "a reasonably prudent plaintiff perceives both the injury and the role that the defendant has played in that injury." *T. R. v. Boy Scouts of Am.*, 344 Or 282, 291-92, 181 P2d 758, 763 (2008). Because Elliot filed his Complaint on December 21, 2011, he may bring claims for acts occurring only after December 21, 2010. All of the alleged acts, except the delisting of the firearm, occurred before December 21, 2010. Thus, defendants assert that only the delisting of the firearm survives the one-year statute of limitations.

Elliot responds that all of the alleged acts comprise a continuing tort and should be reasonably construed as a systematic pattern of conduct. "[A]t the heart of the continuing tort idea is the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." *Davis v. Bostick*, 282 Or 667, 671-72, 580 P2d 544, 547 (1978). If Elliot is correct, then the Fourth and Fifth Claims are timely under both the OTCA and ORS 659A.875(1). In support of his continuing tort theory, he points to his allegations in paragraphs 25 and 26 that he has been treated differently, subjected to daily negative treatment in a hostile environment, been isolated and outcast from his co-workers, and subjected to ongoing retaliation and adverse treatment in the workplace.

In *National R.R.. Passenger Corp. v. Morgan*, 536 US 101, 114 (2002), the Supreme Court substantially limited the continuing violation doctrine, holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[4] The Court went on to state that discriminatory or retaliatory acts such as "termination, failure to promote, denial of transfer, or refusal to hire" constitute discrete unlawful employment practices and cannot form the basis of a continuing tort. *Id.* The Ninth Circuit applied *Morgan* in *Cherosky v. Henderson*, 330 F3d 1243, 1246 (9th Cir 2003), noting that "each discrete discriminatory act starts a new clock for filing charges alleging that act" and that "[a] discriminatory practice, though it may extend over time and involve a series of related acts, remains divisible into a set of discrete acts," such that legal action must be brought within the statutory limitations period. *Id* at 1246-47; see also *Lyons v. England*, 307 F3d 1092, 1107 (9th Cir 2002). The fact that the alleged discrimination occurred over a period of time or had "successive effects" does not transform discrete acts into continuing violations. *Dobie v. Liberty Homes, Inc.*, 53 Or App 366, 370, 632 P2d 449, 451 (1981).

Hostile work environment claims, in contrast, are "different in kind from discrete acts" because they are based upon repeated conduct. *Morgan*, 536 US at 115. The "unlawful employment practice" of a hostile work environment "cannot be said to occur on any particular day" because "a single act of harassment may not be actionable on its own." *Id.* Hostile work environment claims based on a course of conduct that cannot be broken down into "discrete," actionable acts can be based on events that would otherwise be outside the statute of limitations. *Id.*

---

[4] Although *Morgan* involved Title VII of the Civil Rights Act of 1964, the Supreme Court's analysis of the continuing violations doctrine is not limited to Title VII actions. It applies with equal force to the Rehabilitation Act and to actions arising under other civil rights laws. *See, e.g.*, *RK Ventures, Inc. v. City of Seattle*, 307 F3d 1045 (9th Cir 2002) (applying *Morgan* to § 1983 claims).

In *Griffin v. Tri-County Metro. Transp. Dist.*, 112 Or App 575, 580-82, 831 P2d 42, 45-56 (1992), the continuing violation doctrine was applied in the employment context. Griffin sued Tri-Met for discrimination based on a physical impairment. Before trial, the defendant moved to strike allegations of facts that occurred more than 180 days prior to the date the plaintiff provided the OTCA notice. The court found that the three allegations which occurred outside of the 180-day notice period were "not the type of discrete, permanent events that would likely support separate actions for wrongful discrimination" and "can be reasonably construed as elements of a systematic pattern of conduct, aimed at causing plaintiff's eventual termination." *Griffin*, 112 Or App at 582-83, 831 P2d at 46. The alleged acts involved a reprimand, a demand that plaintiff consent to an investigation of his health condition, and a threatened suspension if e plaintiff did not provide a list of his medications. *Id* at 581, 831 P2d at 46.

In contrast to the acts alleged in *Griffin*, the adverse actions alleged by Elliot relating to his transfers and demotion are the sort of "discrete, permanent events" similar to those alleged in *Morgan* which cannot form the basis of a continuing tort. Each of those acts would have been a sufficiently adverse action to support a separate claim by Elliot of an unlawful employment practice. Although Elliot alleges that the retaliation and adverse treatment continues, he has alleged no supporting facts of such treatment. His conclusory allegations in paragraphs 25 and 26 are not sufficient to meet the FRCP 8 pleading standards, which requires:

> more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

*Ashcroft*, 556 at 678 (citations omitted).

Therefore, the Fourth and Fifth Claims should be dismissed as barred by the OTCA and statute of limitations with respect to all alleged acts except the delisting of the firearm. Since Elliot seeks the right to amend to allege more facts to support a continuing tort that will bring these claims within the statute of limitations period, the dismissal should be without prejudice and with leave to amend.

**C. <u>Delisting of Firearm</u>**

At this point, the only alleged adverse action admittedly within the statute of limitations is the delisting of Elliot's firearm. Defendants argue that the delisting alone is an insufficient retaliatory act to support either the Fourth or Fifth Claim.

For the purpose of proving retaliation under Title VII, an adverse action need not affect the terms or conditions of employment. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 US 53, 64 (2006). However, it must be material and cause "an injury or harm," meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id* at 67-68. Typically, "petty slights, minor annoyances, and simple lack of good manners" will not deter complaints by victims of discrimination. *Id* at 68.

The delisting of Elliot's firearm is more than a petty slight. He alleges that he is the only MCSO employee who used that specific weapon and had used the same weapon for years without complaint. Complaint, ¶ 25. However, he does not allege what injury or harm he suffered as a result that would dissuade a reasonable person from making a charge of discrimination. Nonetheless, this act occurred after a number of prior alleged retaliatory acts. Although the prior alleged retaliatory acts occurred outside the statute of limitations, they are relevant to show the materiality of later retaliatory acts taken within the statute of limitations. Considered in context, the delisting of Elliot's firearm may have been the straw that broke the

camel's back. At this juncture, this court cannot definitively conclude that a reasonable person would be undeterred from making a complaint due to the delisting of a firearm. Therefore, defendants' motion should be denied as to this allegation.

## III. Defendants Moore, Reiser, Hasler, and Skipper

Defendants move to dismiss all claims against Moore, Reiser and Hasler for failure to state a claim and against Skipper based on the statute of limitations. Given that the Fourth and Fifth Claims may be pursued only against Multnomah County, this argument pertains only to the constitutional claims.[5]

At the hearing on the motion, Elliot conceded that Hasler and Skipper should be dismissed. With respect to Moore and Reiser, Elliot requests permission to amend to add allegations concerning their past and ongoing retaliatory conduct. Defendants object to any amendments relating to Moore.

Public officials are not subject to suit under § 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights. *King v. Atiyeh*, 814 F2d 565, 568 (9th Cir 1987). The personal participation inquiry for individual liability for a plaintiff's civil rights claims "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *See Leer v. Murphy*, 844 F2d 628, 633 (9th Cir 1988). When a plaintiff fails to allege facts to support a claim for relief, the court should dismiss the complaint. *Dumas v. Kipp II*, 90 F3d 386, 393 (9th Cir 1996).

Elliot alleges that Moore falsified the documentation demonstrating that he had completed the state certification requirements (Complaint, ¶ 19) and denied Elliot's request for

---

[5] At the hearing on the motion, Elliot's counsel indicated that an additional constitutional claim may be alleged for violation of the First Amendment.

an empty office in the building (*id*, ¶ 24). Even if Moore falsified his certification documents, that act caused no injury to Elliot. In addition, the denial of an empty office has nothing to do with the procedural due process claim concerning Elliot's transfers and demotion by Sheriff Staton. Thus, the current allegations do not support any constitutional claim against Moore. However, Elliot seeks to amend to allege facts regarding Moore acting in concert with Sheriff Staton and engaging in ongoing retaliation against Elliot. That amendment should be allowed.

**RECOMMENDATION**

For the reasons set forth above, defendants' Motion to Dismiss (docket # 14) should be GRANTED in part and DENIED in part as follows:

1. Granted as to the First Claim alleging a substantive due process violation which should be DISMISSED with prejudice on the basis of qualified immunity;

2. Granted as to the Fourth and Fifth Claims alleging violations of ORS 659A.230 and ORS 659A.199 as to defendants Moore, Staton, Hasler, Reiser, Skipper, and John Does who should be DISMISSED with prejudice as improper defendants and as to defendant Multnomah County which should be DISMISSED without prejudice and with leave to replead additional retaliatory acts within the statute of limitations;

3. Granted as to all claims against defendants Hasler and Skipper who should be DISMISSED with prejudice and against defendants Moore and Reiser who should be DISMISSED without prejudice and with leave to replead; and

5. Otherwise should be DENIED.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due Monday, May 07, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED April 20, 2012.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge